Good afternoon, your honors, and may it please the court. This is a disparate treatment case under the Federal Age Discrimination and Employment Act. The issue is not whether United violated Ms. Polova's rights under a collective bargaining agreement. The issue is whether United treated her differently from younger flight attendants based on discriminatory motives. The district court in this case erred by holding that a statutory disparate treatment case which turned on the question of motive should be decided by a systems board established to enforce collective bargaining agreements. That is not what this court has held in the past, and it flies directly in the face of this court's decision in Carmona, which held that the only time that the Railway Labor Act can preempt a discrimination case is if the collective bargaining agreement can decide the issue. Here it cannot. The question is motive. It's not some kind of collective bargaining agreement right. No precedent in this court or any other court supports what the district court did in this case. United is wrong for three fundamental reasons. First, the court's decision in Carmona directly controls and holds that Ms. Polova's claims are not preempted because Carmona set forth a clear standard for minor dispute preemption. Carmona held that the distinguishing feature of a minor dispute is that the dispute may be conclusively resolved by interpreting the existing collective bargaining agreement, and that cannot happen here. Second, Ms. Polova seeks to enforce a right created by federal statute that applies to all employees in interstate commerce and not a right established by a collective bargaining agreement. Counsel, let me back up a little bit. Is it fair to say that your client contests whether she engaged in the prohibited practice of parking, or is it more fair to say that it doesn't matter whether she did or she didn't, that it was a pretense in order to affect her termination? Judge Englehart, it's the latter. It is that it doesn't matter whether she did or not. In point of fact, she filed a grievance, and it was denied by the system court. So the issue is no longer whether she engaged in parking, according to the collective bargaining agreements. And is that the only issue involving the CBA? That is the only issue involving the CBA. There's no other term, and United concedes this, that could possibly be relevant to this dispute. The issue is whether she was treated differently from dozens of other flight attendants in Houston, Texas, who were younger, who did the same exact thing, and were not disciplined or terminated like she was, and two of her other colleagues who were in their late 50s or early 60s. That's the sole issue. So the only comparison that the court has to make is between the conduct of the younger flight attendants who weren't disciplined, and Ms. Palova's conduct. It doesn't matter whether they were right or wrong under the CBA. What matters is, did they treat her differently from other similarly situated people who did the same thing, based on discriminatory animus? And that is Carmona. That's the Carmona case. And Carmona is not an outlier in this regard. In fact, Carmona has followed the Supreme Court's decision in Hawaiian Airlines that set forth the exact same standard. And this court, and no other appellate court that I'm aware of, has ever questioned that that standard should apply. This is a disparate treatment case. United's suggestion here has no limiting principle behind it. If United's position were adopted by this court, what would happen is any employer in the RLA context could manufacture a pretext for discrimination by simply alleging that somebody violated a collective bargaining agreement. And that would be enough to drag the case before the systems board. The systems board has no expertise or ability to resolve discrimination claims. The systems board is there to look at collective bargaining terms that are specific to an industry. The federal courts, by contrast, have expertise in this area. They've been enforcing discrimination law for more than 60 years. And the federal courts are the only authority that should be deciding this kind of issue as to whether an employee was treated differently from colleagues based on a discriminatory animus. Counsel, what would be wrong with a rule that said, because this is, obviously there's a dispute, but is it more like Carmona, is it more like Reese, it's obviously a little bit different than both. Why couldn't we have a rule that said where the plaintiff puts the joint, the collective bargaining agreement at issue, we're going to say that's preempted? Judge Oldham, I've thought about that, actually, in preparation for this argument. And I think that if the court adopted that rule, this case would still not be preempted. I think that might be a viable rule if a plaintiff made the decision to put the terms of the collective bargaining agreement at issue in a federal court litigation. I still think that the Carmona rule is better because it completely eliminates systems boards from having to hear cases like this where they have no expertise. But if the court adopted the rule that Your Honor is suggesting, there would still be no preemption because Ms. Palova didn't put this issue before the court. In fact, Ms. Palova dismissed a contract claim that she had brought at the beginning of the case, seeking to enforce contractual rights and filed it as a grievance instead. So I'm looking at paragraph 19, and maybe, I think I have the original complaint in front of me, so maybe this has changed in the amended complaint. But in paragraph 19 of the original complaint, she invokes the joint collective bargaining agreement, she attaches it as Exhibit C, and then she has this description about what flight attendants are entitled to do under the collective bargaining agreement. It gives you an absolute right to do trading. She describes the sort of practice of putting stuff on the line. It seems like she's invoking, at least in this paragraph and in the attachments, she's saying, this is a case about my rights as a flight attendant pursuant to a collective bargaining agreement to do trip trading and all the rest of it. Your Honor, she dismissed that claim. She had originally brought a breach of contract claim, and when United challenged that as being preempted by the Railway Labor Act, she dismissed it. United did not, at least at that time, challenge her discrimination claim as being preempted by the Railway Labor Act. So she took that claim completely out of the case. Even if the paragraph perhaps stayed in the amended complaint, and I can't honestly remember if it did or not, it isn't germane to the cause of action that she was asserting. It is simply background facts, and it is no different from Hawaiian Airlines or Carmona, where there was reference to the collective bargaining agreement. Carmona was clear that you can make reference to the collective bargaining agreement. You can even raise issues that affect the collective bargaining agreement, but if it doesn't conclusively decide the case, and that's the language from Carmona, then it's not preempted. So Carmona drew a bright line here, but in this case, Ms. Palova's current cause of action, the one that's up on appeal, is not even touching on the issue of the collective bargaining agreement, because it doesn't matter whether she engaged in parking or didn't engage in parking within the meaning of that agreement. The only issue is selective enforcement, which was the issue in Carmona. The court in Carmona, this court, held that because Carmona was arguing that the CBA policy was being applied in a discriminatory manner, that that took it outside of preemption, and that is what Ms. Palova's arguing. In fact, I doubt at the trial if the issue of what the collective bargaining agreement says will even come up. The issue is going to be, did she do the same thing as other younger flight attendants and get punished for it when they let these other people off the hook? And United, according to the record, has algorithms and spreadsheets that show the nature of the conduct by all of these flight attendants. Why is it that out of dozens of people in Houston, they singled out three that were in their late 50s and early 60s, right before offering early retirement as COVID was starting to take root in the United States in February of 2020? I mean, that's what happened here. They were offering early retirement, and they sought to scare these older flight attendants into retiring because they get paid more, and their medical insurance costs more money to the airline. That's what the claim is. In this case, it has nothing to do with the collective bargaining agreement. It's entirely possible that in a lengthy agreement like that, that you could find that anybody violated some provision of the agreement, and therefore could be subject to termination. But that doesn't excuse terminating people based on discriminatory animus, which is what happened here. Finally, the Reese case was not a disparate treatment case. Reese is the case that United relies on. Unlike Palova, Reese, the plaintiff Reese, was seeking benefits under the collective bargaining agreement that were related to promotion and training. Ms. Palova is not seeking benefits under her collective bargaining agreement. Reese did not allege, and there's no language in the opinion that suggests otherwise, that he was treated differently from other similarly situated people based on the race discrimination claim that was at issue in the case. He didn't allege that. He just alleged that there was race discrimination, and that he was denied certain rights under the collective bargaining agreement that he should have had. Therefore, the court had to specifically interpret the collective bargaining agreement to know if he was entitled to those rights or not. He was not asking, as we are here, for a comparison of how other similarly situated people were treated in comparison to him. And Reese was based on the Supreme Court's decision in Lingle, 486 U.S. 399, which specifically distinguished federal discrimination statutes from the types of claims that, in that case, Section 301 of the Labor Management Relations Act, preempted. And in Lingle, the Supreme Court noted that unlike just cause termination issues in a And that's the key point here. This is a statutory right. It doesn't just apply to airline and railway workers. It applies to any American who is employed in interstate commerce. And the right originates in a federal statute. Therefore, the systems board is not qualified to be making decisions about whether it applies in this case. The ADEA was amended specifically in 1978 to guarantee the right to jury trial, which Justice Scalia pointed out is the spinal cord of democracy. And so with that amendment . . . Counsel, did you raise your ADEA right to a jury trial argument before the district court? I believe that we did, Your Honor. I believe that we did. I don't think we would have had to specifically argue the right to the jury trial, but we pointed out that this was not preempted and that there was a fact issue that needed to be submitted to the jury. So there is no question that this is an independent statutory cause of action that should not be preempted. If United's position was adopted, most discrimination cases would wind up before the systems board, at least in the RLA context, and that would have devastating effects on enforcement of civil rights laws in those cases. Thank you, Your Honor. Thank you, Counsel. Good afternoon, Your Honors. I'm Jim Tucker with the EEOC. If I could, Judge Oldman, I'd like to come back to your question about what if the plaintiff puts the question of the CBA at issue. I have a couple of things I'd like to say on that. First of all, the concept of at issue in the RLA preclusion claim is really only that fundamental test that this report gave us in Hawaiian Airlines and what this court repeats in Kamauana, whether or not the dispute may be conclusively resolved by reference or by interpretation of the CBA. So that's the level of, or that's the type of analysis that needs to be engaged in to really understand what it means to put it at issue. And I think a contrast, and maybe to highlight that point, is the fact that in Kamauana, this court recognized that for a district judge to still maintain jurisdiction over a claim, the CBA does not need to be irrelevant to the claim. The CBA is something that the parties can refer to, to bolster and support their own claims. And in fact, in that case, the court rejected Southwest Airlines' argument that because the CBA would be referred to, to look at issues such as the legitimate non-discriminatory reason of the employer and the question of pretext, exactly the issues that this court relied on here, that was an error. That's not preclusion. So the question always comes back to what is that ultimate test? And so— And I appreciate the answer. The thing I'm hung up on is that it strikes me that it's—imagine this case goes to trial. The fact finder is going to have to make a decision about, for example, this April 11, 2019. So I've got the amended complaint now, and it's just full of discussions of parking, lines, trading. It's full of it. It's all over this complaint. And someone is going to have to decide, just for example, did you illegally—not you, you know what I mean—did the flight attendant in this case, Ms. Pavlova, did she, in violation of the no parking provision, did she park this April 11, 2019 trip on somebody else's line? Because if she did, that's obviously cause for termination under the CBA, right? Well, first of all, last question first, Ron. I believe—  —the test is to whether or not that automatically calls for termination of the CBA. United asserted on summary judgment briefing that they have the discretion to apply what discipline they see fit in the situation, and the CBA—it's uncontested, as I understand it—does not require termination for parking. So there's a fact question there. But getting back to the larger issue of what does the court do with this, and does this rise to the level of precluding a claim, again, this is the type of fact dispute that I think that the courts have already—this court in particular—have already recognized can naturally be part of the give-and-take of a properly presented disparate treatment claim. There are going to be fact disputes over elements of the claim, but those elements or those disputes do not constitute a basis for preclusion, simply because there will be a dispute wherein the CBA will be preferred. I think because the Supreme Court identified this test as something that involves whether or not the dispute can be conclusively resolved—and I see my time is up—can I be—unless it's going to be conclusively resolved by resort to the CBA, that there is this—it really is focusing on the very core of the case, and the core of the case does not seem to be the type of discussion that we're talking about here regarding a dispute over whether she did or did not park. As Judge Englehart noted earlier, it really isn't about whether she did. Mr. Tucker, your time has expired. Thank you, Your Honors. Thank you. Ms. Culp? May it please the Court, Krista Culp for United Airlines. The holding below is a correct application of a narrow preemption rule consistently applied by this Court. I'd like to focus on two key points today. First, by Ms. Palloba's own pleadings, resolution of this case would have required an interpretation of a disputed term in the CBA in this Federal forum. And second, the Supreme Court and this Court have been clear. To protect the efficacy of the RLA and collective bargaining, any claims requiring interpretation of a CBA's disputed meaning are preempted. First, I'd like to turn to this narrow case, because the briefing tries to talk past each other on this point. Ms. Palloba was not unique in her termination. She was terminated for cause, for violation of the parking prohibition in the CBA, along with 27 others, young and old, East Coast to West Coast. But her case represents a very narrow category of discrimination cases that are nonetheless preempted. Unlike many claims of discriminatory discharge, there is no factual dispute in this case about Ms. Palloba's conduct. The parties agree on which trades Ms. Palloba made. If that were the issue, there would be no need to interpret the CBA. Unlike many, Ms. Palloba did not complete the CBA grievance and system board process and get an interpretation and ruling on whether her conduct was parking. If she had, there would be no need to interpret the CBA in this case. Instead, she proceeded straight to Federal court. Appellant's brief says that the only question is what United selectively enforced its rule against parking as a pretext to discriminate. We heard that again from my friend again today. But that's just not true. If Ms. Palloba had sued acknowledging that she had violated the CBA through parking, there would be no need to interpret the CBA in this case, and there would be no preemption. But through her own pleadings, and again in discovery, Ms. Palloba did not concede that she had committed a fireable offense and then argued that the termination was nonetheless discriminatory. She did not offer to amend that summary judgment to remove that, stipulate in her trial court briefing that that would not be disputed. And as you asked Judge Engelhardt, she has never conceded that her conduct constituted parking. Instead, Ms. Palloba chose to squarely allege in a Federal suit that her conduct did not constitute parking under a proper interpretation of the CBA. If she did move to file a second amended complaint under Rule 15 and she dropped the allegation, in fact, or she filed an RFA, you know, she filed an admission with you and said, I admit that I parked on April 11, 2019. I gather there were a couple trips, but she agreed. Would you agree that this is not preempted? Your Honor, if she had done that below, absolutely, Your Honor. I think that's actually the point. It would put it into the world of what actually was the situation in Carmona. The plaintiff in Carmona had gone through a grievance process. They had ruled against on the, you know, legitimacy of that basis. And then when Carmona came to Federal court, there was not a dispute about what the meaning of the terms were. And that's where we get a lot of these cases that say, as long as you refer to the CBA, it's fine. It can be in Federal court. But that is not what she did. In her pleading, in her deposition, and in the pleading below, she did not concede that. And there's a reason. It's because she absolutely wants to have that issue live and decided in this case. Maybe but she doesn't. RLA says she can't. But she doesn't have to, right? She could win her age discrimination claim without ever getting into any of this, couldn't she? She could convince the district judge, convince our panel to say, assuming for the sake of discussion that she in fact committed parking, it's still true that United treated me differently based on my age. Because there were other people who also committed parking and were treated differently because they were younger. Right? So this is what I'm trying to get at is I'm not sure how much you get from the fact that she wants to litigate it. I mean, she may be very earnest in her belief that she didn't actually do it, but it could also be utterly irrelevant to the resolution of the discrimination claim. Your Honor, it is not really irrelevant because that is what she has pleaded and put directly in the speech. Your point about how she has pleaded it. But those are two different claims. But counsel, she could have a trial. She could have a jury trial where the jury could decide that she loses on the issue of whether or not she engaged in parking, but she could still win on an age discrimination claim depending on the facts presented in connection with that claim. Isn't that true? Yes, Your Honor. But your question just asked if she loses on the issue of whether it constituted parking. That's because there must be a decision reached in the resolution of this case, one way or the other, on whether what she did is parking under the CBA. That's the entire point. It doesn't matter. And the appellant's assertion here that . . . Anything that involves the CBA, then it's exclusively, it exclusively has to be resolved under the CBA and its terms. Your Honor, anything that requires an interpretation of a disputed term in a CBA is preempted and only belongs with the system board. Well, let's say she concedes this is what parking means, I just didn't do it. I'm sorry? Let's say she concedes the meaning of parking, right, because you're saying she's disputing what parking is. Sure. All right. Let's say she concedes what it means but contends she didn't do it. In the same case where she brings an ADA claim, couldn't she lose on the I didn't do it, but win on an ADA claim? Yes, Your Honor. And what you just put forward, if I heard you correct, and correct me if I did not, if she wasn't saying I dispute what the thing means, I dispute that factually I didn't do it, that is a fact dispute that this Court has cleared, and we do not suggest that that creates preemption. What we are saying is that this is not that case. There is no dispute about which trade she made. She says, I agree, I made this trade, this trade, this trade. That does not constitute parking under the CBA's correct interpretation. United Airlines says, yes, it does. That is precisely what the RLA says, no one can decide but the system board. And that's a very narrow set of cases, as I was trying to point out. Factual disputes are usually what's going to come up, right? But isn't your client's defense at trial always going to be she engaged in parking which was improper and a fireable offense, and that's why she got fired, not because of her age. That's always going to be a fact question at trial, isn't it? Well, no, Your Honor, often when someone is terminated it's because there's an allegation that they did something and the response is, I did not do that. That is a fact question. But if they say, here's what everyone agrees happened factually, and there's a dispute about what that legally means because of the terms and the meaning of the CBA, that's what the RLA is meant to address. And specifically, the RLA's text and purpose makes it clear that this conclusively resolved language that they would like to take out of context is not a workable rule. I want to be clear that this is a narrow proposition, right? The amicus brief notes repeatedly that discrimination cases are generally not precluded by the RLA, and that the general rule is that the RLA doesn't require arbitration of cases involving federal lights. We don't disagree. This case is not applying the general rule. This district court here was consistent with both the Supreme Court's ruling in Hawaiian Airlines and this court's holdings in Reese, Collar, Blankenship, and others regarding when those claims are preempted. And the Supreme Court recognized for decades that the RLA's purpose was to ensure interpretive uniformity and predictability, and to have that, the meaning given a contract phrase or term must be subject to uniform federal interpretation. So the text of the RLA is what this court must apply, and it defines minor disputes as those that involve the interpretation of the collective bargaining agreement. Here's what's key, Your Honor. The statute does not say that disputes are only preempted when the interpretive question will decide the case. Instead, they are preempted when the case must decide the interpretive question. Here's where you're losing me. She has two claims. Abstract away from this, like zoom out from a minute, and think about it in this schematic. There's two different claims. One is, you discriminated against me because I'm older than my counterparts, and here are some memes and stuff that are off-color, right? That's a classic ADA claim, right? If I'm wrong about that, I also didn't commit parking. And in order to resolve that second claim, right, then she wants to get into a dispute about maybe what the CBA means and what happened on April 11th and what the—and maybe you're right that that second thing doesn't—cannot be here. In fact, I agree with you that that is preempted and that is an RLA problem. What you're losing me is you never have to get there if she wins on the first claim. And plaintiffs come in all the time, and they have two different claims in the alternative. They say, you know, I went on breach of contract, and if I don't, then they tortiously interfered with my contractual rights, right? But you never get to the tort if I went on the breach. Do you see what I'm saying? Yes, Your Honor. Like, they're totally separate. Thank you for bringing that up. So, I don't think, respectfully, that you're right that there are two different claims. There's one claim that she was terminated for discriminatory reasons. And the termination, United Airlines says, was because you blatantly violated a parking prohibition three different times after we warned you, after the union warned you, right? That's their assertion. And she says, no, it wasn't for that. It was because of these other reasons. That is a classic ADA discrimination case. It's not two separate claims. It's the same set of information, not just facts, but legal issues that the court and ultimately the fact finder would have to address in order to address this single claim. And that's exactly what the court below held, right? The interpretation must necessarily reach this interpretive question because Ms. Palova has put it at issue. So, for example— But that's what I just asked you, though. Won't you always defend the case on grounds that she was terminated for violating a provision of the CBA? So, consequently, your answer to Judge Oldham's question is, oh, no, the CBA is always going to be what we hang our hat on if we were to go to trial. Isn't that a fair statement? Your Honor, we often will rely on the reason for—you know, every case in discrimination is going to try to put forward a legitimate, non-discriminatory basis for termination. But very few of them, is there a dispute about what the agreement means? That is not usually the case. Usually there's a fact dispute, or they say, even if you found a gotcha, I understand I technically violated the CBA, but that was a pretext. That's a factual dispute. The few cases, though, where the two parties come in and say, I think the agreement means X, I think the agreement means Y, and the court now has to decide it. And in this case, the court would have to decide it at one or all three of the steps of analyzing a discrimination case. For example, even at the prima facie step, one of the elements is that they would have to prove that she was replaced by someone outside the protected class—she wasn't—by someone younger—she wasn't—or was otherwise discriminated against because of her age. This court has held that in cases where, in the face of proof showing an adequate, non-discriminatory reason for the release, someone might not be able to meet that prima facie case. But that means the court's going to have to assess whether there was a strong, adequate reason for that termination, meaning that the interpretation of the CBA must happen. At step two, the idea that—this is what the district court recognized below—both parties are going to be addressing, as a matter of law at summary judgment, whether United had a legitimate, non-discriminatory basis for her termination. She says, they did not because I did not violate it. My conduct that we agree on doesn't constitute parking if you interpret it correctly. And United says, nope, that's the wrong interpretation. We did. And that court is going to have to address that. And the idea that kind of has been put forward—and this goes to your question, Judge Oldham, about whether the court might just be able to go, la-la-la, skip that, let's go to trial—isn't really true because, as a practical matter in these cases, do you know who's pushing hard on step two? It's a plaintiff. Ms. Palova's not going to say, let's assume they're right. Ms. Palova's going to come in, based on her pleadings and her testimony, and say, no, Judge, I want a ruling that they did not have a legitimate, non-discriminatory basis for firing me. Because if so, she wins at step two. And United is going to want to come in and say, no, I need a ruling as a matter of law on what this thing means, because if I had a legitimate, non-discriminatory basis, it wipes out her prima facie case. So the court's going to have to address it. What Ms. Palova's really saying is she wants to be able to say, let's assume there was legitimate—maybe the court could do that, but it doesn't have to. The court could reach it, which is a problem under the RLA. But even if you got to step three, what she really wants is to be able to get to a jury and present that as pretext, that there was a pretext for discriminatory firing, because there wasn't actually a good reason to fire her. And this court's case law very clearly says, in the US Supreme Court, that a person can show pretext by putting forward evidence that the asserted justification is false. That is what Ms. Palova seeks to do. If she were to get all the way to the jury, she will put forward evidence and say, they say it means X, it doesn't, they're wrong, and ask the jury, the federal jury, to decide the interpretive question of what the CBA means. Every step along the way, whether ruled on by this court or ruled on by the jury, would mean that someone other than the system board is going to be deciding what this collective bargaining agreement means, and that cannot happen under the RLA. And under that— Let's assume they have to resolve whether or not it's parking, but at bottom it's just going to be, other people did the same thing I did, and they weren't fired for doing what I did. Whatever you call it. Whether it's parking or not, at the end of the day, she's going to have to, on her discrimination claim, she's going to have to establish that whatever you call what I did, if you establish that I did it, others did the same thing and weren't fired. Isn't that what she's going to have to do on an AIDS discrimination claim? Your Honor, assuming that she wouldn't lose on some re-judgment based on a legitimate non-discriminatory basis, if her pretextual evidence can't overcome that legitimate basis, which is very strong here, then yes, her only argument would be, well, there were other people who weren't fired. Now, I could get into why the record reflects that that's not a very strong argument either on the evidence, but the point is, it doesn't matter, and that's why it's important for this court to not get caught up on the conclusively resolved language. Here's why. This court, in Reese, laid out exactly how we should be looking at these cases, and Reese is not an anomaly. Starting at the U.S. Supreme Court, it has been clear that a claim is a minor dispute and preempted any time interpretive issues must be addressed, not when they're conclusive, but when it's inherently necessary in reaching a resolution. Even if she could ultimately try to prove that she had a disparate impact, getting there is going to require a ruling on what the CBA means. It's going to require it at prima facie. It's going to require it at a legitimate basis. It's going to require it in putting forth evidence of pretext or no pretext, and so the fact that that has to be ruled on means that it cannot happen in a federal court. The U.S. Supreme Court said in Brotherhood v. Chicago that controversies on the meaning of an existing CBA in a particular fact situation are preempted. Pittsburgh v. Railway Labor Executives, minor disputes are those involving the interpretation, not necessarily resolved by, but involving, and in Hawaiian Airlines, it confirmed the same. It said minor disputes involve controversies over the meaning of an existing CBA in a particular fact situation. The RLA says that those interpretive questions belong within the adjustment board and outside the courts. Why? If all plaintiffs must litigate an issue of interpretation before the same system board, it ensures the uniformity that the RLA says is essential, that Congress has decided is essential and taken the extraordinary step of saying, this kind of case goes in only one place. We don't do that for almost any other kinds of cases, right? We're fine with district courts across the country reaching different results on things, even in different interpretations. RLA says you can't do it for a CBA. If instead, plaintiffs could each litigate the identical interpretive issue in independent judicial proceedings across the country, courts could reach divergent conclusions. And candidly, that's what Ms. Palova asks. Under her proposed rule, all 28 of the people who were fired for parking in this investigation could bring 28 suits in 28 district courts across the country, asking each court to rule on what the same provision of the CBA means if they assert that it doesn't mean what United says it means. And you could have 28 different results. And that's why— Counsel, can I ask a fact question? You say 28. They say three. Is there a fact dispute between the two of you about how many people were fired? There's not, Your Honor. With respect to Ms. Palova, the reason they say three is because that's the smallest circle they can draw to make it sound suspicious, when in fact, it's very clear from the record that the investigation was undertaken at the request of flight attendants, and that investigation was done from a data-driven process across the system, and that people were terminated in three separate hubs of the airline, 28 people were fired. It was not three. It was three in Houston, because those were the people that were found to have parked. And she asserts those three people were all women who were older. That is true in Houston, because those were the people in Houston who were found to have parked three or more times after the rule in the CBA is clear, after the airline had sent a letter saying, this violates, it's about fairness, if you do it, you can be terminated, after the union sent a letter saying, we agree with the airline on this one, you can't do it, if you do it, you could be terminated. She did it three more times. So did the other two that were fired. And of the people who were fired in that set of people, only two were older than her, 25 were younger, 18 were more than a decade younger, and there was many people fired at the age of 30 or under, as there were 55 or older. When you look at what actually happened, even her evidence of pretext is going to disappear. The same thing is true for the other factual assertions in the record. She suggests that these took place, and I heard it again today, that the company was preparing for COVID layoffs. The termination was in February of 2020, before anyone knew that COVID was going to be a problem. So I say that not because it actually goes to this court's analysis, but just to assure you that this is not a gamesmanship system. This is an issue that Ms. Palova knew was a direct interpretive issue. As you saw in our brief, one of those people who was terminated did what she could have done, went to the system board and asked for an interpretation, and the system board ruled against one of her two main interpretive arguments. So she didn't complete her grievance process because she knew what mom was going to say, so she'd rather go ask dad. But if we were about to find out on rebuttal, but if your friend on the other side stands up and says, yeah, I would actually enter, I would enter an admission that we violated the parking provision and just go to trial on pretext, I take it the United's position is that would be a permissible result under the RLA? Your Honor, it would have been below, but this court's jurisdiction is to review whether the holding of the court below was legally correct and whether on the record before it, it had jurisdiction to rule on the claims as pleaded, and the court correctly found that it was preempted because Ms. Palova had created a direct issue. If she had, and she had every opportunity at summary judgment to say, I will amend my pleading, I will take away that disputed issue, I will stipulate that I will not be presenting evidence at trial that it means something different, absolutely. But now on appeal, Ms. Palova can't ask this court to rule that the court below correctly decided, but we're going to give her a do-over and send it back down, that's just not how judicial review works. I do think it's important for this court to be able to issue a clear ruling because this is an issue that is not only narrowly comes up, but entirely within the control of a plaintiff. Thank you, counsel. Your time has expired. Thank you, Your Honor. Roboto. Thank you, Your Honor. First, I want to address Carmona and the standard that Carmona set forth, which is that the CBA has to conclusively resolve the dispute. My understanding from counsel's argument is that United concedes that they can't meet that standard. They can't show that Carmona would conclusively resolve an age discrimination claim. And Carmona, in using that language, was not an outlier. Carmona was quoting directly from the Supreme Court's 1994 decision in Hawaiian Airlines, and I would submit that this court has to remain faithful to that language because that is how the Supreme Court has interpreted the Railway Labor Act. That's the only standard that can apply, and so based on counsel's concessions, this decision cannot stand. Secondly, I also heard counsel say that there's no dispute about the facts in this case. And to me, that is also a fatal concession to United's position. We are not disputing about what the definition of parking is, what it means, or what Ms. Palova did. There is no dispute about the actual conduct. Ms. Palova denied before the systems board that she had engaged in parking. We certainly couldn't have a rule that you only get the benefit of a federal court forum if you admit guilt to something that you think you didn't do. That would be unfair. That would require every employee to basically turn in a guilty plea before they could bring a discrimination suit in federal court. That certainly can't be the law. But there is no dispute about what she did or the definition of parking, which is why, and this is the critical point, neither side, not United nor Ms. Palova, submitted any kind of jury instruction about parking. There was not one jury instruction about parking in this case by either side. Third, I heard a suggestion at least, and maybe I misinterpreted it, but that Ms. Palova had raised in her summary judgment briefing issues about whether she engaged in parking. That is not true. The record below shows that she didn't deny parking in her summary judgment brief. She only focused on the issue of whether she was treated differently from other younger flight attendants. And then finally, I also heard the point that there were 28 flight attendants fired nationwide as a result of parking. And that may be true, but each base, United has multiple hubs, and each base, whether it's San Francisco, Houston, or Newark, New Jersey, has a different management structure and different people making the decisions and different people starting the investigation. The record's also clear on that. There were only three people in Houston fired. They were all in their late 50s and early 60s, and there were dozens of younger flight attendants let off the hook. So it doesn't matter what happened in San Francisco or Newark or at some of these other bases. What matters is what happened in Houston. And the decision maker, this is in the record, the decision maker who signed the termination letter had posted on her social media website, a Pinterest site, a disparaging cartoon about older female flight attendants making fun of these women for not retiring when they're apparently supposed to. So the decision maker made something that was more than a stray remark. It was a direct discriminatory cartoon poking fun at older flight attendants. And of course, as we know, in Houston, I don't know about these other places, but in Houston, seniority was a factor that United considered as part of their algorithm. They actually had a spreadsheet, and the first factor in that spreadsheet was the seniority of the flight attendant, which as I think everyone agrees, has nothing to do with parking. So the fact that seniority was being considered by a person that had a history of publicly mocking older flight attendants shows very strong evidence of discriminatory animus. I submit that Ms. Palova is entitled to litigate this case in federal court. It's not preempted because no matter how you interpret parking, which isn't even really a dispute, it doesn't resolve the central question of this case. Counsel, if it's not a dispute, you recognize that you had to drop some parts of your complaint in order to proceed in federal court. That's why you dropped the breach of contract claim. Why not drop this dispute about whether the April 11, 2019 trip was parking or not? Why not just file an admission and say, yes, fine, it was, but we feel really good that we were treated differently on the basis of our age. It has nothing to do with this parking. It's pretext. Let's go to trial on pretext. Your friend on the other side said, all but invited you to do it. Well, we wouldn't normally make an admission of something that isn't relevant to the case, to the issue to be decided in the case that would force a client to admit something that they don't agree that they did. That wouldn't be reasonable. Again, that would open the federal courts only to people that admit that they're guilty, and that can't be the law. I think we did, however, only brief the issue of disparate treatment. We didn't brief the issue in the lower court of whether she had engaged in parking or not. In effect, we made that concession without making a statement that would have been inappropriate under the circumstances. It wasn't necessary. It's not relevant if she engaged in parking or not. Thank you, counsel. Thank you, Your Honor. That concludes the matters on today's document. The court will take this matter under advisement. We are adjourned. All rise.